UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELIZABETH CRUZ | No. 18 CR 479-1<br><br>Judge Ronald A. Guzman |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following sentencing memorandum. For the reasons set forth below, the government requests that this Court sentence defendant ELIZABETH CRUZ to a term of imprisonment at the low end of the applicable Guidelines range of 97 to 121 months' incarceration. This sentence is supported by the factors to be considered under Title 18, United States Code, Section 3553(a). In addition, the government requests that this Court impose a three-year term of supervised release.

**I.  OFFENSE CONDUCT**

From August 2012 through January 2018, defendant was employed as a pharmacy technician at Allcare Discount Pharmacy ("Allcare") located at 2750 West North Avenue, Suite 207, in Chicago. Plea Agreement (Docket No. 43) ¶ 6. During this time, Allcare purchased Schedule II Controlled Substances, including Hydrocodone-Acetaminophen 10mg/325mg pills, from distributors to dispense to patients. *Id.* As part of her employment with Allcare, defendant had access to the Hydrocodone pills maintained on the pharmacy premises. *Id.*

Beginning in or around September 2015, defendant and her co-defendant Jacqueline Green, who was also employed at Allcare as a pharmacy technician, decided to steal Hydrocodone pills from the pharmacy's inventory and sell them. *Id.* Throughout the course of the conspiracy, defendant regularly obtained quantities of Hydrocodone pills from Green, who stole them from the pharmacy's inventory. *Id.* Defendant then sold the pills for a profit to Individual A and divided the proceeds from the sale of the Hydrocodone pills. *Id.* Defendant received at least $600 every two weeks from the sale of the stolen Hydrocodone. *Id.*

Defendant concealed theft of the pills by falsifying the pharmacy's inventory to make it appear that the missing pills had never been received from the distributor or had been dispensed to pharmacy patients. *Id.*

On or about December 13, 2017, surveillance footage from Allcare pharmacy appeared to show defendant and Green stealing Hydrocodone pills from the pharmacy. *See* Gov't Version Ex. A at 3. After reviewing this footage, the owner of the pharmacy, who was also the pharmacist-in-charge, reported a theft of 190 pills of Hydrocodone to the Drug Enforcement Administration (DEA). Gov't Version Ex. B at 1. The report indicated the type of theft as "employee pilferage." *Id.* Following the report, DEA investigators interviewed the pharmacy owner, defendant, and Green. After being advised of her rights pursuant to *Miranda*, defendant admitted that she and Green had been stealing Hydrocodone from the pharmacy and had been selling it for a profit. Gov't Version Ex. C. DEA investigators reviewed records received from

2

Allcare, including the pharmacy's perpetual inventory of Hydrocodone-Acetaminophen 10mg/325mg pills and its electronic dispensing log, and from Allcare's distributors, and determined that approximately 56,108 Hydrocodone pills were unaccounted for from approximately September 2015 through January 2018. Gov't Version Ex. D.

Defendant acknowledges that she and Green stole approximately 56,108 Hydrocodone-Acetaminophen 10mg/325mg pills from Allcare. Plea Agreement ¶ 6. Defendant also acknowledges that she received at least $10,800 in proceeds from the sale of these stolen pills. *Id.*

## II. CORRECTIONS TO PRESENTENCE INVESTIGATION REPORT

The government has just one factual correction to the Presentence Investigation Report (PSR). In paragraph 5 of the PSR, the first sentence should state that defendant "withdrew her plea of *not* guilty," not that she "withdrew her plea of guilty."

## III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Guidelines calculation set forth in the PSR. The amount of controlled substances involved in the offense of conviction for which defendant is accountable is approximately 56,108 Hydrocodone-Acetaminophen 10mg/325mg pills. Pursuant to Application Note 8(A) to Guideline § 2D1.1, when determining the offense level for an offense involving a controlled substance that is not specifically referenced in the Drug Quantity Table in Guideline § 2D1.1, the controlled substance is to be converted using the Drug Conversion Tables, and then

referred to the Drug Quantity Table to obtain the offense level. Converting the 56,108 Hydrocodone-Acetaminophen 10mg/325mg pills results in approximately 3,759 kilograms of converted drug weight. Therefore, the base offense level is 32, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(4).

Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

The government agrees with the Probation Office's determination that defendant has three criminal history points and is in criminal history category II. PSR, ¶¶ 28–34.

With a criminal history category of II and an offense level of 29, the government also agrees that the advisory Guidelines range is properly calculated as 97 to 121 months' imprisonment. PSR ¶ 82.

IV. **THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A) SUPPORT A CUSTODIAL SENTENCE AT THE LOW END OF THE GUIDELINES RANGE**

In addition to the Guidelines calculations, the Court must consider the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. The framework requires that the Court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; and (5) the need to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). Considering these factors, it is the government's position that a sentence at the low end of the Guidelines range of 97 to 121 months' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of the offense and the history of the defendant and afford adequate deterrence to future criminal conduct.

    A. **The Seriousness of the Offense Warrants a Substantial Custodial Sentence**

Defendant's offense conduct is serious. Over the course of more than two years, defendant and her co-conspirator repeatedly stole large quantities of Hydrocodone pills from the pharmacy where they worked. In total, they are responsible for diverting over 56,000 Hydrocodone pills. This was not a one-time mistake or

momentary lapse in judgment, but a decision, made over and over again, to steal quantities of dangerous opiates and distribute them for profit. Each bottle of pills raided from the pharmacy's inventory, each false statement recorded in the pharmacy's records, each dollar received in exchange for the stolen pills, constitutes an affirmative choice by defendant to continue to engage in criminal conduct.

The broader impact of defendant's actions is also significant. The opioid epidemic has devastated the lives of countless individuals through addiction and overdose. Defendant contributed to this national crisis by helping make opiates available on the street to individuals who otherwise would not and should not have access to them. Defendant took advantage of her access to these dangerous drugs and profited at the expense of addicts, their families, and the broader community left trying to address this public health crisis. The seriousness of the offense conduct necessitates a substantial custodial sentence.

### B.     Defendant's Personal Characteristics Support Imposition of a Sentence at the Low End of the Guidelines Range

A sentence at the low end of the Guidelines range would provide a suitable custodial sentence to account for the seriousness of the offense, to provide adequate deterrence to defendant as well as other similarly situated individuals, and to consider defendant's mitigating factors. Before the instant offense, defendant had prior convictions for battery in 2009 and 2011. PSR ¶¶ 31, 33. Since being charged in 2018, defendant has maintained employment, has not incurred any new arrests, and has complied with the terms of her pretrial release. PSR ¶ 6. Defendant is the primary

6

caregiver for four minor children. PSR ¶ 54. Although defendant appears not to be eligible for a two-level reduction pursuant to Guideline §§ 2D1.1(b)(18) and 5C1.2 in light of a two-point prior conviction for a violent offense, *see* PSR ¶ 17, she appears to have accepted personal responsibility for her criminal conduct, including by participating in an interview with DEA on January 18, 2018, regarding her scheme with Green. *See* Gov't Version Ex. C. The government's position is that a sentence at the low end of the Guidelines is sufficient to achieve the goals of sentencing.

V. **SUPERVISED RELEASE CONDITIONS**

The government agrees with the Probation Office's recommendations for the conditions of supervised release to be imposed in this matter—as set forth in the Probation Office's Sentencing Recommendation—given that the facts underlying the offense and detailed in the PSR support the imposition of those conditions. Specifically, discretionary conditions 1, 4–6, and 8, and special conditions 3, 5, and 11 will help the defendant to establish a law-abiding life when she is released from custody. Discretionary conditions 9 and 14–18 and special conditions 5–7 will permit the probation office to appropriately supervise the defendant. Special condition 10 will ensure that defendant complies with her financial obligations. The conditions of supervised release proposed by probation are consistent with the statutory goals of affording adequate deterrence to, and protecting the public from, additional criminal conduct. In addition, these conditions will allow defendant to continue to develop skills necessary to be gainfully employed.

## VI.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence defendant to a term of imprisonment at the low end of the advisory Guidelines range and impose a three-year term of supervised release with the conditions discussed above.

Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  /s/ *G. David Rojas*
NANI M. GILKERSON
G. DAVID ROJAS
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn, 5th Floor
Chicago, Illinois 60604
(312) 469-6049

Dated: August 21, 2019